**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**UNITED STATES OF AMERICA,**

**v.** **Criminal No.: 4:24CR00015-002**

**BRIAN BACKUES**

**Defendant,**

---

**POSITION OF THE DEFENDANT ON SENTENCING**

COMES NOW the Defendant, Brian Backues, by counsel, in accordance with Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.2 of the Sentencing Guidelines and Policy Statements, as well as this Court's Sentencing Order, and hereby represents that the Defendant has reviewed the Probation Officer's Pre-sentence Report and sets forth the following as his position on sentencing:

**INTRODUCTION**

Mr. Backues faces a *de facto* life sentence. He is 47 years old, with a history of mental health issues and substance abuse issues. He has a criminal history that is significant as a level V offender, but notably he has never committed an act of violence and, despite one prior sentencing event for sex offenses, he has never been alleged to have—nor convicted of—either touching a child or making any plans to engage in such acts. His prior charges, as with the charges he now faces sentencing on, involved talk and fantasy. This talk and fantasy, while inarguably appalling, unacceptable, and lascivious, never rose to a point where the quintessential case presented itself: one in which Mr. Backues proposed meeting a child.

His guidelines are 360 months, or 30 years, to life. The Government contends that the mandatory minimum is 35 years based on one prior sentencing event in state court and a common

set of facts. As the arguments below bear out, the Government's position is incorrect, and this Court should reconsider its prior advisory ruling on the issue of the mandatory minimum and find that the mandatory minimum sentence is 25 years, which would be an appropriate disposition under the facts and would allow Mr. Backues—at some point in the future—to have a life outside of prison. Otherwise, he likely will serve the remainder of his life in prison.

**OBJECTIONS TO THE PRE-SENTENCE REPORT AND MOTION TO RECONSIDER PRIOR RULING ON MANDATORY MINIMUM**

Mr. Backues, through counsel, has previously advised the probation office and the government as to his objections to the presentence report. Several of those objections, such as a typo with the guidelines, his GED, and his social security number, have been resolved. The remaining objection relates to the mandatory minimum.

By way of procedural history, this court previously entered an order finding that the mandatory minimum was 35 years. (ECF 28). This was pursuant to motions and memorandum filed by the Government and Mr. Backues prior counsel. In those motions, the Government argued that Mr. Backues had three prior convictions, and his counsel at the time argued that he had one. The Court noted that if any "other party demonstrates a reason why another mandatory minimum should apply, the Court will reassess its determination."

Mr. Backues, through new counsel, now respectfully moves this Court to reconsider its prior ruling and find that the mandatory minimum is twenty-five (25) years. In the original motion filed on this issue—the substances of which will note be repeated *ad nauseum*—Mr. Backues' counsel focused on the fact that the three prior convictions the Government relied upon were part of a single sentencing event, with a single plea agreement, and a single statement of facts, and that the state statute did not relate to the sexual exploitation of children.

1. Mr. Backues Has One Prior Conviction as All of the Acts are a Continuous Episode of

Criminality

As the Government aptly noted in its initial filing, "There is no Fourth Circuit Case law that interprets the meaning of the word 'conviction' in the context of 2251(e)." (ECF 83). However, other courts have ruled that "multiple counts of a single indictment constitute separate convictions, as long as they arise from

separate and distinct criminal episodes." *United States v. Randolph*, 364 F.3d 118, 124 (3rd Cir. 2004). The issue truly before the Court is whether the three prior convictions are "separate episodes of criminality," or whether they are part of a single continuous episode of criminality. Multiple convictions may merge for purposes of recidivist enhancements. *See United States v. Leeson*, 453 F.3d 631, 640 (4th Cir. 2006). The Fourth Circuit offers several factors, which are non-exhaustive, to help the Court make such a determination:

> (1) whether the offenses arose in different geographic locations,
>
> (2) whether the nature was substantively different,
>
> (3) whether each offense involved different victims,
>
> (4) whether each involved different criminal objectives, and
>
> (5) whether the defendant had the opportunity after committing the first in time offense to make a conscious and knowing decision to engage in the next-in-time offense. *See United States v. Leeson*, 453 F.3d 631, 640 (4th Cir. 2006);

The Stipulation of Facts is contained within the Court's record at ECF 24-7. According to that pleading, a Norfolk police officer began texting with Mr. Backues in an undercover capacity, posing as a minor. The messages and communication began on January 12th, 2020. On January 15, 2020, according to the Stipulation Mr. Backues made a sexual request of the officer, and a second request on January 16th, 2020. It is the

understanding of undersigned counsel that these messages were continuous in nature over the two day period that was the subject of the indictments. A photograph was later found on Mr. Backues phone, depicting what appeared to be a juvenile female with exposed breasts.

An application of the factors weigh in favor of this Court finding that it was a single continuous episode of criminality. First, the offenses clearly were in the same general geographic region. This factor would appropriately be applied in situations where perhaps during a robbery spree multiple crimes are committed across different locations. That is not the case here.

Second, the nature of the offenses are substantively similar. The two counts of proposing a sex act to a child are the same as one another. The fact they occurred over different dates is irrelevant when the Court looks at the prior evidence in its totality. This is one single, continuous thread of communication with the undercover officer. If there was a significant break between the messages—such as days or weeks—the outcome may be different. However it occurred over a 24 hour period during a continuous series of messages.

In regard to the image of the child, the Government in its original motion relied upon the fact that it was a separate victim as the most important factor. While that factor certainly cuts against Mr. Backues, it is not dispositive. The single image was recovered a week later only because of the time it took to seize and extract the phone. The time it would have been in his possession is the same time period as his communications with the officer. Finally, it is an image that would not even qualify as a conviction under federal law. There was no sexualized depiction of any type in the image. This Court

should apply the modified categorical approach to this photograph and determine that it does not qualify as a prior.

The fourth factor is whether the offense involved different criminal objectives. They do not. The acts all ultimately involve sexual gratification. They are not so distinct, as the different between burglary and eluding, as to warrant this factor weighing against Mr. Backues.

Finally, Mr. Backues never had a conscious opportunity to disengage. As discussed above, this was a continuous conversation between the officer and Mr. Backues. The fact that it is impossible to know when or how the photo was received or taken should be interpreted to the benefit of Mr. Backues.

2. The Prior Convictions of Proposing Sex Acts to a Minor Should Not Qualify Under 2251(e)

Finally, the prior convictions of proposing sex acts to a minor should not qualify under 2251(e) because Mr. Backues was not speaking to a "child" as contemplated by the statute. Certainly, under Virginia as well as federal law, one can be convicted of sex crimes for proposing sex acts to an undercover agent or otherwise that the individual *believes* is a minor. This, however, is contemplated by the statutes. Under the charge Mr. Backues was convicted of, Va. Code § 18.2-374.3, the statute criminalizes behavior with "any person he knows or *has reason to believe* is a child younger than 15 years." This language explicitly and intentionally expands the definition of "child." While it is also true that such evidence is sufficient under federal laws such as Enticement, the issue of culpability is a distinct and separate issue from that of the recidivism statute and the issue of a sentencing enhancement.

18 USC § 2251(e) only uses the term "minor," without an expansive language that would include the subjective beliefs of the individual who was convicted. The standard rules of statutory

interpretation apply here: if Congress wished to expand the definition of "child," it could have done so—and the exclusion of such expansive language must be viewed as intentional. Furthermore, any ambiguity in the statute should be interpreted in the favor of Mr. Backues, and not the favor of the Government, under the rule of lenity. Again, the issue of culpability (where *belief* that the individual is a minor) is entirely distinct from the issue here: whether a sentencing enhancement should be applied. Mr. Backues submits that it should not.

Accordingly, at most the prior conviction for child pornography is the only predicate offense, and therefore this Court should find that the mandatory minimum is 25 years.

**APPLICATION OF THE 18 U.S.C. §3553 SENTENCING FACTORS**

Pursuant to 18 U.S.C. § 3553(a), the sentencing court is directed to impose a sentence that is "sufficient, but not greater than necessary" to achieve the goals set forth set forth by Congress, including the imposition of a just punishment. In determining the minimally adequate sentence § 3553 also directs the court to consider, among other factors:

(1) the specific nature and circumstances of the offense,

(2) the unique history and characteristics of the defendant,

(3) the need to foster deterrence and promote respect for the law,

(4) the need to protect the public from further crime,

(5) the need to address any educational, vocational, medical, or therapeutic concerns with respect to the individual defendant, and

(6) the kinds of sentences available, including the ranges and category of offense.

In assessing these factors, the statute further requires that the court consider the applicable sentencing guidelines. The court, however, "may not presume that the Guidelines range is

reasonable," and instead "must make an individualized assessment based on the facts presented." *Gall v. United State*s, 128 S. Ct. 586, 597 (2007), *see also Rita v. United States*, 551 U.S. 338, 351 (2007) ("[T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."). The sentencing guidelines are merely "a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita*, 551 U.S. at 350.

As the arguments below bear out, a sentence of the mandatory minimum of twenty-five years is the appropriate disposition in this matter. If the court overrules the objection to the mandatory minimum, then the below arguments support the mandatory minimum regardless. It is an extraordinarily lengthy sentence for Mr. Backues which will likely encompass the majority of the remainder of his life. It is a serious sentence, recognizing the seriousness of the convictions, and which addresses all of the goals and needs of sentencing, while still recognizing Mr. Backues' individual characteristics and background, his utmost remorse for his involvement and actions, and all of the other factors under §3553.

**<u>Nature and Circumstances of the Offense</u>**

The court, having presided over the bench trial in this matter, is certainly familiar with the facts and circumstances of the offense. It is undoubtedly serious, as it involves sexual communication with an underage girl. Nonetheless, at no point did Mr. Backues ever intend to meet with Jane Doe, nor formulate any concrete plans to do so. He was not caught on his way to meet her, which is often the case, and in fact he never was even aware of the specifics of where she lived. At no point did he ever threaten her, intimidate her, or attempt to blackmail her in any way, shape, or form. In totality, these factors ultimately place the nature and circumstances of this particular offense as one where the mandatory minimum is appropriate.

Mr. Backues does not receive a reduction in his total offense level for acceptance of

responsibility. Yet, as the Court has heard directly from Mr. Backues at the Motion to Withdraw as well as at the *Frye* hearing prior to the trial, Mr. Backues has always been prepared to take responsibility and to enter a guilty plea to a reasonable resolution upon his belief, the belief of prior counsel, and the belief of undersigned counsel, that his mandatory minimum was twenty-five years. In doing so, he was prepared to spare the court, the United States Attorneys' Office, the Marshall's office, and the agencies and personnel involved from having to go to trial. Most importantly, he was prepared to save a minor child from having to be examined in court by both parties.

Unfortunately, Mr. Backues ultimately opted to proceed to trial in order to preserve his appellate rights and to afford counsel an opportunity to mount *legal* defenses to the charges against him. Mr. Backues asks the court not to hold his decision to plead not guilty against him and to recognize, despite not receiving the decrease in his total offense level, his willingness to have otherwise accepted responsibility.

## History and Characteristics of the Defendant

18 U.S.C. §3553's directive that the court must consider the unique history and characteristics of the defendant embodies the long-held principle that a sentencing court must consider the defendant's crimes not in a vacuum, but in light of his or her entire life.

Mr. Backues is 47 years old. He was born in Portsmouth, Virginia and has spent his entire life in the Hampton Roads Community. He was raised in a generally stable environment, though he was exposed to drugs and prostitution in his neighborhood. As discussed more in depth below, Mr. Backues has suffered from significant mental health issues his entire life, beginning at age 14. Recurring psychiatric episodes have resulted in in-patient hospitalizations even as a teenager, and throughout his life. It seems apparent that as a teenager and young adult he was never provided any services to adequately address these issues, which likely explains how and why he ended up

dropping out of school in only the 9th grade. He did, however, ultimately receive his GED. His employment history, as noted in the PSR, compromises of day-labor jobs and other unskilled work.

His criminal history is also reflective of the mental health and substance abuse issues that clearly underline this case. For example, at only 21, he was arrested for a concealed weapon for having a steak knife in his pocket after becoming belligerent about being unable to purchase beer. He receives 3 points related to an Attempted Burglary charge that occurred in 2003; he received multiple probation violations related to that offense, which otherwise would not have counted towards his criminal history level.

The 2020 conviction in Norfolk is the most serious charge in his history and is of course the predicate offense for the mandatory minimum. In that case, Mr. Backues entered a guilty plea to two counts of Proposing Sex Acts to a Minor, and one count of Possession of Child Pornography. As the Court heard at trial, he communicated with an undercover detective during that offense, and the recordings of his calls to her clearly indicated intoxication. He made no attempts to ever meet her. Additionally, the photograph which resulted in the child pornography charge would not have qualified as pornography under the federal statute.

The Court should consider the facts and circumstances of the prior convictions, the age of the burglary, in combination with his clear mental health and substance abuse issues. In doing so, the Court should consider whether his current criminal history category overstates his record.

The Court has had an opportunity to hear directly from Mr. Backues in the past, both through the recordings related to his charges as well as part of motions related to this case. He has never denigrated the Court or the Government. He recognizes the seriousness of his actions, and it has been clear that he has been willing to accept responsibility. This is indicative of a person who, in the totality of their history and background, does not require a potential lifelong

incarceration.

**The Need to Foster Deterrence and Promote Respect for the Law, and The Need to Protect the Public from Further Crime**

Congress further directs the Court to consider the need to foster deterrence and promote respect for the law, and also to protect the public from further crime. In regard to general deterrence, that is the deterrence of other individuals who may contemplate criminal behavior, that goal is met by the mandatory minimum itself. Whether that minimum is 25 years or 35 years, it is an extraordinarily lengthy sentence. As stated, it is potentially a *de facto* life sentence. There can be no question that anyone similarly situated as Mr. Backues should be deterred by the mandatory minimums set forth by Congress. As far as Mr. Backues himself, it will also specifically deter him. He will be considerably older, and though he has been incarcerated in the past, this will be incredibly longer. The mental connection between that incarceration and illicit behavior and acts should serve to deter him.

**The Need to Address Any Educational, Vocational, Medical, or Therapeutic Concerns**

Mr. Backues has a history of mental health issues, including depression and anxiety. This is combined with substance issues which are detailed in this position paper, the presentence report, as well as were obvious to the Court in the recordings played by the Government at trial. The presentence report does not fully detail his actual history of mental health problems.

Mr. Backues in fact began to show psychiatric issues at an early age, when he had his first in-patient admission at 14 because he was engaged in suicidal behavior and cutting. At 21, Mr. Backues was admitted to Eastern State Hospital. He further was hospitalized multiple times for psychiatric issues. He has been diagnosed with Bipolar I Disorder: Severe without Psychotic Features, Alcohol Use Disorder, and Depression. In 2023, he was hospitalized in Maryview.

In sum, Mr. Backues is an individual who has struggled his entire life—since at the least the young age of 14—with significant mental health issues that warranted in-patient hospitalizations. These hospitalizations have continued throughout his life, and unfortunately the root conditions have never fully been addressed.

In terms of his physical condition, Mr. Backues has several ongoing health issues which are detailed in the presentence investigation report in paragraph 103. Once assigned to a Bureau of Prisons facility, he would benefit from continued medical care to address those issues.

In terms of education, Mr. Backues dropped out of school in the 9th grade but ultimately received his GED. He is eager to learn and would benefit from educational programs while incarcerated. Furthermore, he would benefit from vocational training as he has no consistent history of employment.

**The Kinds of Sentences Available**

The Pre-sentence Report sets forth a total offense level of 42 and criminal history category of V. The resulting guideline's recommendation is 360 months to life.

The charges that Mr. Backues was found guilty of require a mandatory minimum sentence. It is important to assess the impact and importance of mandatory minimums on the calculation of the sentencing guidelines. Historical cases involving defendants charged with offenses requiring a mandatory minimum are ultimately used in the formulation of sentencing guidelines when the commission goes back to look at historical sentences for similarly charges individuals. In fashioning a sentencing scheme that requires mandatory time, Congress in affect inadvertently alters the "baseline" of where a particular defendant and his individual characteristics and circumstances may fall within the sentencing guidelines. The guidelines were initially created in 1984 by the Commission; in creating the guidelines, the Commission examined the sentences of

individuals over a period of time, relying initially upon a sample of 10,000 presentence investigations. This created the "heartland" of sentences to foster consistency. The recommended guideline ranges are therefore inherently elevated by the sample of cases where mandatory time was the only option. Because of mandatory minimums, there were no "outliers" so to speak, that would lower the median sentence in calculating guidelines. Regardless, a sentence of 25 years is appropriate to serve all of the needs of sentencing.

## CONCLUSION

The court shall consider each of the above factors in light of the applicable recommended sentencing guidelines range and be mindful of the directive to avoid unwarranted disparities in the sentences of similarly situated defendants. The mandatory minimum in this case, which again Mr. Backues submits is 25 years, is more than sufficient to meet the needs of Congress. Any incarceration beyond, under the facts and circumstances of this case and considering all of the factors and the personal characteristics of Mr. Backues, would serve only as mere continued punishment beyond an already lengthy prison sentence.

For the reasons set forth above, the Defendant, Mr. Backues, by counsel, respectfully submits that a sentence of 300 months, or 25 years, will accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553.

Respectfully submitted,

BRIAN BACKUES

By Counsel

_________/s/___________
S. Mario Lorello
VSB# 80629
Counsel for Defendant
ZOBY & BROCCOLETTI, P.C.

P.C. 6663 Stoney Point South
Norfolk, VA 23502
(757) 466-0750
(757) 466-5026
mario@zobybroccoletti.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of October, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Matthew J. Heck
U.S. Attorney's Office
101 W. Main Street, Suite 8000
Norfolk, VA 23510
757-441-6331
matthew.heck@usdoj.gov

______/s/_______________
S. Mario Lorello, Esquire
VSB# 80629
Counsel for Defendant
ZOBY & BROCCOLETTI, P.C.
P.C. 6663 Stoney Point South
Norfolk, VA 23502
(757) 466-0750
(757) 466-5026
mario@zobybroccoletti.com

I hereby certify that on the 2nd day of October, 2026, I caused a true and correct copy of the foregoing Motion to be emailed to the following non-filing user:

Nicole Pender
United States Probation Officer
U.S. Probation Office
600 Granby Street, Suite 200
Norfolk, VA 23510

_______/s/_____________
S. Mario Lorello, Esquire
VSB# 80629

Counsel for Defendant
ZOBY & BROCCOLETTI, P.C.
P.C. 6663 Stoney Point South
Norfolk, VA 23502
(757) 466-0750
(757) 466-5026
mario@zobybroccoletti.com